## ODELL v. CAMPBELL.

### JUDGMENTS OF COURTS OF GENERAL JURISDICTION.

There is no presumption in favor of courts of general jurisdiction, except as to matters and persons falling within the scope of that jurisdiction. Where the proceeding is special, and outside of that general scope, either as to subjects or persons, the presumption ceases, and the record must show a compliance with the special authority by which the extraordinary jurisdiction is exercised.

### SUMMONS—SERVICE BY PUBLICATION.

Where the order for publication omits to direct that a copy of the summons and complaint be mailed to the defendant, addressed to his place of residence, and there is nothing in the record, or in the facts recited in the order to excuse such omission, the requirements of the statute are not complied with by mere publication, and the order, and the service, and the judgment following it, are void.

### STATUTE MUST BE STRICTLY COMPLIED WITH.

Where the statute prescribes certain things which the summons published shall contain, they must be deemed essential and necessary, and the absence of any of them is not a compliance with its requirements, and is fatal to the jurisdiction.

### PROOF OF SERVICE BY PUBLICATION.

Where the service of summons is had by publication, proof thereof can only be made by the affidavit of the printer, or his foreman, or his principal clerk, and the affidavit should state that the person taking the same holds one of these positions. An affidavit commencing in this way: " A. B., editor of the *Oregon Statesman* newspaper, * * * being sworn say," etc., is insufficient, and would not give the court jurisdiction of the defendant.

### JUDGMENT—EFFECT OF UNTRUE RECITALS.

An averment of due publication of a summons, in a judgment entry, which appears from the record to be untrue, or is not affirmatively supported by the facts contained in such record, is a nullity, and may be disregarded.

APPEAL from Yamhill.   The facts are stated in the opinion.

*John Burnett and W. R. Willis,* for appellant.

*William Strong & Sons, and H. & A. M. Hurley,* for respondent.

By the Court, LORD, C. J.:

This is an action to recover real property.   The complaint is in the usual form.   The answer denies the material aver-

ments of the complaint, and alleges title and rightful posses-
sion in the defendant, and also improvements of the value of
five hundred dollars.    The reply denies the new matter set up
in the answer.    The cause being at issue, a trial was had
which resulted in a judgment in favor of the defendant for
the possession of the land, from which an appeal has been
taken to this court.

Before proceeding to examine the principal matter in con-
troversy, it is necessary to dispose of an objection which the
respondent insists is fatal to the appeal.    This objection is,
that the assignment of errors is not in compliance with the
statute, because it does not specify the grounds of error upon
which the appellant intends to rely.    Technically the assign-
ment of errors is not as formally stated as it might be—in
this respect it is susceptible of improvement—but at the same
time it specifies the grounds of error with sufficient distinct-
ness to notify the respondent of the objections upon which
the appellant intends to rely.    This, we think, is a sufficient
compliance with the statute.

To proceed:    Both parties in this action claim title through
Russell B. Odell, the donor of the United States; the appel-
lant by a conveyance made directly to himself, on the 17th
day of October, 1879, and the respondent by a sheriff's deed,
made to him through a sale by the sheriff upon a judgment
rendered against the said Russell B. Odell, on the 10th day
of November, 1863, in favor of Abram Coovert.    It appears
from the record, that on the 4th day of March, 1863, one
Abram Coovert commenced an action in the circuit court for
Yamhill county, against the said Russell B. Odell, and on the
same day sued out an attachment, and on the 6th day of
March, 1863, the sheriff, under the writ, attached the real
property sought to be recovered in this action.

This much of the action was commenced before the adop-
tion of the code, but all subsequent proceedings were taken,
viz.: filing affidavit for order of publication of summons, pub-
lication of same, proof of publication, rendition of judgment,

sale of property, etc., after the code went into effect, on the first day of June, 1863.

The point in controversy is the validity of the title obtained under this judgment, which is assailed collaterally for want of jurisdiction.    The judgment was rendered by a court of general jurisdiction, upon default, against an absent defendant without the territorial limits of the state, upon constructive service by publication.

When such a judgment is produced in evidence, the authority for its rendition must appear upon the face of its record. In such case the jurisdiction depends upon a strict compliance with the statutory regulations, or the judgment rendered will be a nullity.    The presumptions of jurisdiction which . exist in favor of the judgments of a court of general jurisdiction, when proceeding according to the course of the common law, ceases when the authority to render the judgment is made to depend upon a prescribed mode, according to special statutory provisions.    This distinction is deep rooted in the law, and has been stated with great clearness by Mr. Justice Field, in *Galpin* v. *Page*, 3 Sawyer, 109: " When a judgment of such a court is produced, relating to a matter falling within the general scope of its powers, the jurisdiction of the court will be presumed, even in the absence of the formal proceedings, or steps by which the jurisdiction was obtained, and such jurisdiction cannot ordinarily be assailed, except on a writ of error or appeal, or some other direct proceeding.    But when the judgment of such a court relates to a matter not falling within the general scope of its powers, and the authority of the court over the subject can only be exercised in a prescribed manner, not according to the course of the common law, or the judgment is against a party without the territorial limits of the court, who was not served within those limits, and did not appear to the action, no such presumption of jurisdiction can arise.    The judgment being as to its subject matter or persons out of its ordinary jurisdiction, authority for its rendition must appear upon the face of its record.    In other

words, there is no presumption in favor of the judgments of courts of general jurisdiction, except as to matters and persons falling within the scope of that general jurisdiction. When the proceeding is special, and outside of that general scope, either as to subjects or persons, the presumption ceases, and the record must show a compliance with the special authority by which the extraordinary jurisdiction is exercised. This doctrine is an obvious deduction from principle, and is sustained by adjudged cases almost without number, in the highest courts of the several states, and in the supreme court of the United States. There is running all through the reports the emphatic declaration of the common law courts, that a special authority conferred upon a court of general jurisdiction, which is exercised in a mode different from the course of the common law, must be strictly pursued, and the record must disclose the jurisdiction of the court. On this subject the cases speak a uniform language, with scarcely a dissentient voice."

The principle to be deduced from this is, that when a party invokes the protection of a judgment rendered against an absent defendant, who never appeared in the action, and who was, at the time of the alleged service, without the territorial limits of the state, the burden of establishing the jurisdiction of the court to render the judgment is imposed upon such party—that no presumption of jurisdiction will be indulged to sustain the judgment, but that the statutory requirements, by which jurisdiction is acquired, must be strictly complied with, and thus the authority of the court to render the judgment made affirmatively to appear upon the face of the record.

We are now to inspect the record of the proceedings in the case of *Coovert* v. *Odell*, for the purpose of ascertaining, in conformity with these principles, whether the court acquired jurisdiction to render the judgment under which the respondent claims title to the property sought to be recovered. The affidavit for an order of publication does not undertake to state the probative facts, nor even so much as to repeat, in

certain particulars, the language of the statute, or its equivalent in substance. It states, for instance,, "that defendant's residence is not known to affiant," but it does not state that his residence cannot be ascertained by him with reasonable diligence, much less the acts constituting due diligence. Tested by *Forbes* v. *Hyde*, 31 Cal., 350, which was cited and approved by Mr. Justice Deady, in *Neff* v. *Pennoyer*, 3 Sawyer, 289, with great force and reasoning, the affidavit is fatally defective in more than one particular. But inasmuch as the supreme court of the United States, in the last named case, 5 Otto, 721, held that defects in the affidavit could only be taken advantage of on appeal, or some other direct proceeding, and could not be urged to impeach the judgment collaterally, and as the defects in the affidavit will not change the conclusion we have reached, the further consideration of the affidavit is dismissed without expressing any opinion on that point.

The order of publication recites that "it appearing to the undersigned judge that the defendant, Russell B. Odell, in the within entitled action, cannot be found in this state; that a cause of action exists against him, it is therefore ordered that service be made on the said defendant, Russell · B. Odell, by publication of notice in the *Oregon Statesman* newspaper, of the pendency of this action, once a week for the space of six weeks." The order directs the publication of the notice, but it does not also direct, as the statute requires, that a copy of the summons and complaint be deposited in the post-office, directed to the defendant at his place of residence, nor does any reason appear in the order, or in fact, in the record, for this omission. The language of the statute is explicit—it requires that a copy of the summons and complaint must not only be deposited in the post-office, but that it must be done forthwith, or the facts excusing the omission must appear to meet the requirements of the statute. If, for instance, the order, in addition to the facts stated as "appearing to the judge," had recited that "the resi-

dence of the defendant is unknown to the affiant and cannot, with reasonable diligence, be ascertained by him," then the reason for the omission, or the fact excusing the direction of deposit in the post-office, would be disclosed upon the face of the record.    Such an order—reciting the facts which did appear to the satisfaction of the judge—discloses affirmatively the authority of the court to exercise its extraordinary jurisdiction.    But when the order of the court omits to direct a deposit in the post-office, and there is nothing in the record, or in the facts recited in the order, to excuse such omission, the requirements of the statute are not complied with by mere publication.    The statute contemplates, if possible, that actual notice shall be had of the pendency of the action.    Deposit in the post-office, directed to the residence of the defendant, would be much more likely to notify him of the pendency of the action, than publication of the summons in a newspaper, however general its circulation.

The reason of this direction of the statute is founded in a just regard for the rights of absent defendants, and as an additional precaution to prevent the injustice of condemning any man unheard, or without his day in court.    It is not sufficient that the residence of the defendant is unknown, but it must also appear that it cannot, with reasonable diligence, be ascertained, to excuse the omission to direct the deposit in the post-office.    The order is an essential part of proceedings of this character, and necessary to show jurisdictional facts, without which the judgment will be a nullity.    The importance, then, and the necessity of the order bearing upon its face the necessary statutory requirements, becomes evident.    It must not only direct the publication in a paper designated, and for the period prescribed, but it must do more.    The statute requires that it must direct a copy of the summons and complaint to be *forthwith* deposited in the post-office, directed to the defendant at his place of residence, or the facts excusing the omission to make such direction of deposit must appear, or

the order allowing service by publication, and the service and judgment following it, will be void.

Resort to the affidavit would be of no avail. It does not state any facts which would justify the omission. It merely states that the residence of the defendant is unknown to the affiant, but it does not even so much as add in the language of the statute, " nor can with reasonable diligence be ascertained by him," much less what ought to be stated, the facts constituting such diligence.

The result is that the record nowhere discloses any facts showing why a mode of service prescribed by the statute, and designed to give actual notice to absent defendants, has not been complied with. " When constructive service of process by publication is substituted in place of personal citation, and the court upon such service is authorized to proceed against the person of an absent defendant, not a citizen of the state, nor found within it, every principle of justice exacts a strict and literal compliance with the statutory provisions." (*Galpin* v. *Page*, 18 Wallace, 350.)

In *Neff* v. *Pennoyer*, supra, the order recited every essential fact necessary to confer jurisdiction, among which were, that " the residence of the defendant is unknown to the affiant, and cannot with reasonable diligence be ascertained by him," and the reason for the omission to direct a copy of the summons and complaint to be forthwith deposited in the post-office, appeared in the order and upon the face of the record. A glance at the record in this case will show an absence of any reason to excuse the omission.

The next objection is, that the summons published does not contain the date of the order for service by publication. Section 55 of the code of procedure provides, among other things, that " summons published shall contain the name of the court and the title of the cause, a succinct statement of the relief demanded, the *date of the order for service by publication*, and the time within which the defendant is required to answer the complaint." The summons published in this case con-

tains all these several matters except the date of the order for service by publication. Where the statute prescribes certain things which the summons published shall contain, they must be deemed essential and necessary, and the absence of any of them in the summons published is not a compliance with its requirements. Nor do we think that this provision of the statute is merely directory, as claimed, but mandatory. For, if the summons may omit the date of the order for service by publication, and still be held sufficient, why not with equal reason, " the succinct statement of relief demanded," or the name of the court and title of the cause, or any other matter which this provision requires the summons shall contain ? In the eye of this law one is as essential as the other, and none can be omitted without vitiating the summons published. It seems to us no one would claim that a summons which omitted to state these matters required by the statute, could be held valid.

The summons is the process by which the court acquires its jurisdiction over the person, and certainly, if there is any legal proceeding in which a strict and literal compliance with the statute ought to be exacted, it is in a proceeding of the character under consideration. The summons published must contain the date of the order, not some other date before or after the order was made by the judge, but *the* date of the order itself. The summons published does not contain the date of the order for service by publication, and is not the summons which the law prescribes. We think the objection well taken. It is sufficient that the law has prescribed the several matters which the summons shall contain, and whether deemed needful or not, we have no authority to disregard its requirements.

The next objection is that there was no legal proof of the service of the summons by publication, and consequently that the court had no jurisdiction to render the judgment. Section 69 of the code of procedure provides, that the service of the summons shall be proved in case of publication, by

the "affidavit of the printer, or his foreman, or his principal clerk." The affidavit of proof of publication is as follows:

"C. P. Crandall, editor of the *Oregon Statesman* newspaper, published at Salem, weekly, in said county and state, being sworn, say, that the above notice to R. B. Odell has been published in said newspaper for six successive weeks, beginning June 26th, 1863."

Conceding that "editor" is within the spirit of the provision, as held in *Neff* v. *Pennoyer*, supra, it will be observed that the affiant swears to nothing except the matter set forth after the word "say." He describes himself as editor, but he does not swear that he was editor, or that such in fact was his position. In construing this provision of the statute, Mr. Justice Deady, in *Neff* v. *Pennoyer*, 3 Sawyer, 296, said: "The statute is imperative, and admits of no proof of service but the affidavit of the printer, or his foreman, or his principal clerk. The reason is obvious. The persons described are the only ones who, as a rule, are likely to have personal knowledge of the fact by virtue of their relation to the subject."

That C. P. Crandall is one of the three several characters authorized by the section quoted to make the affidavit of proof by publication, is a material fact, not sworn to, but which must be proved before the court would be authorized to render judgment against the absent defendant. In *Steinbach* v. *Luse*, 27 Cal., 298, the identical question here involved was decided, and the court say: "By subdivision third of the thirty-third section of the practice act, the fact that an order of publication has been complied with, is to be proved by 'the affidavit of the printer, or his foreman or principal clerk,' and as we construe the provision, they are the only persons competent to testify on the subject. That the affiant is one of the three, is itself a substantive fact, and must be proved as such before the court in which the action is pending can proceed to render judgment against the parties to whom notice is intended to be given. In the affidavit now in question the affiant swears to nothing except to the matters set forth after

the word 'deposes.' He names himself as principal clerk, but he does not swear that that was his position in fact. (*Exparte Bank of Monroe*, 7 Hill, 178; *Cunningham* v. *Goslet*, 4 Denio, 71; *Staples* v. *Fairchild*, 3 N. Y., 44; *Payne* v. *Young*, 8 N. Y., 158.) The result is, that as the record is made up, in *Steinbach* v. *Luse, et al.*, judgment was rendered against Jones without any proof that the order of publication had been complied with."

But it is insisted that due service of the summons appears from the recitals in the judgment, which states that " the defendant had been duly served with notice of the pendency of this suit by publication of notice in the *Oregon Statesman* for six successive weeks prior to the first day of this term." Upon this particular kind of recital in a judgment, Mr. Justice Deady, in *Neff* v. *Pennoyer*, made the following apposite criticism:   " What is meant by the averment ' the defendant had notice of the pendency of the action,' is not clear. The averment is without the statute, which does not provide that the defendant shall have notice of the pendency of the action by publication, but that constructive service of the summons may be made upon him by that means.   Whether he thereby acquires actual notice of the proceedings, the court cannot know, and   therefore   cannot find.   The averment should be that the defendant was duly served with the summons by publication of the same in the *Advocate*, etc.   But assuming that this averment is formally sufficient, it does not appear to be true in point of fact.   The record not only fails to support it, but actually contradicts it.   So far as the record discloses the fact there was no evidence before the court that the defendant had any notice of the pendency of the action by the publication of the summons."

The same is true of the case under consideration.   The evidence not only fails to support the recitals in the judgment, but, in point of fact, actually contradicts it.   There was no evidence disclosed by the record that the defendant had notice of the pendency of the action by publication of

the same. The summons published omitted an essential part —the date of the order for service by publication—which the statute specifically enumerates among other essentials it shall contain. No legal summons, or such as the law prescribes, according to the record in this case, was ever published; nor was there any valid proof of the publication of *this* summons. Admit that an editor is within the meaning of the persons authorized by the statute to make the proof of publication, and there was no proof by such a person that the summons was published, and the record discloses none other before the court. The result is that the record was made up, and judgment rendered against the defendant, without any proof that the order of publication had been complied with.

But it is insisted, upon the authority of *Hahn* v. *Kelly*, 34 Cal., 391, that the court in which this judgment was rendered, being one of general jurisdiction, that the same presumptions of law are to be indulged in favor of the regularity of its proceedings, and for the purpose of upholding its judgments, as when proceeding according to the course of the common law. Two propositions were maintained in that case. First, that when a judgment of a court of general jurisdiction was offered in evidence, it could only be collaterally attacked for matters apparent upon its record, and in the absence of such matters, the jurisdiction of the court must be conclusively presumed. Second, that the record of the court consists only of the papers which compose what is designated by the statute as the judgment roll. The first proposition is true with certain qualifications and exceptions, to which the case under consideration belongs. "These qualifications and exceptions arise," says Mr. Justice Field, "where the proceedings, or the party against whom they are taken, are without the ordinary jurisdiction of the court, and can only be brought within it by pursuing special statutory provisions." Besides, the matter here complained of is apparent upon the face of the record, and speaks for itself. There is no necessity of resorting to presumption. "They," says the same learned

Judge, " have no place for consideration when the evidence or the averment is made. When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred."

" Moreover," says Mr. Justice Deady, " in this class of cases, it is not sufficient that an averment of due service of the summons in the judgment entry should not be in conflict with the facts contained in the record—it must be affirmatively supported by them. If such an averment could be successfully substituted for the proof of the fact which the statute requires, it is reasonable to suppose that the truth would be generally dispensed with. The averment is a nullity."

As to the second point maintained in *Hahn* v. *Kelly*, supra, that the record of the court consists only of the proceedings or papers which compose what is called the judgment roll, see *Galpin* v. *Page*, 3 Sawyer, 119; *Neff* v. *Pennoyer*, Ib., 287. It must be observed, however, that *Hahn* v. *Kelly* has been overruled in *Belcher* v. *Chalmbers*, 53 Cal., 635, for reasons which an examination of that case will make apparent, and are equally addressed to this court.

It is unnecessary, however, to consider the subject further. What the law of this state is, when a court of general jurisdiction is exercising a special power conferred upon it by statute, and not according to the course of the common law, was decided in *Northcut* v. *Lemery*, 8 Or., 316, in which the court say: "And in such cases even a court of general jurisdiction must strictly comply with the requirements of the statute in its proceedings, and this compliance must affirmatively appear from the record itself; and unless it does so appear no presumption will be indulged to sustain the validity of its judgments or decrees."

For these reasons, it follows that the judgment in the case

of *Coovert* v. *Odell* was void for want of jurisdiction, and the objection of appellant ought to have been sustained, and the judgment of the court below must therefore be reversed, and it is so ordered.

Judgment reversed.